YELLOW DUCK NURSERY, INC., AND IVY LEAGUE SCHOOL (N. J.) INC., APPELLANTS, v. DEPARTMENT OF INSTITUTIONS AND AGENCIES OF THE STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 20, 1977—Decided November 23, 1977.

Before Judges LORA, SEIDMAN and MILMED.

*Mr. Morton L. Ginsberg* argued the cause for appellants.

*Ms. Jane Sommer,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney

General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

PER CURIAM. This matter is before the court for the second time as the result of a remand to the Division of Youth and Family Services of the Department of Human Services (formerly the Department of Institutions and Agencies) for a further hearing. It involves a challenge by privately owned, nonsectarian, child day care centers to a regulation promulgated by the Department pertaining to the transportation of children to and from such day care centers. The regulation provided that "[w]hen more than six children are transported in one vehicle, there shall be another adult in the vehicle in addition to the driver." *N. J. A. C.* 10:122-2.7(d)(1).

Appellants had contended the regulation was arbitrary and unreasonable, and also unconstitutionally discriminatory in its application because of the exemption of other types of child day care centers. They sought and obtained a hearing before the Division of Youth and Family Services. At the conclusion thereof the hearing officer filed a report in which, after reviewing the testimony presented, he found the regulation to be reasonable. Though recognizing the existence of a potential equal protection issue, since certain "nursery schools" were exempt from the regulation, he refrained from deciding the issue, considering it "beyond the scope of his adjudicatory function." The Director of the Division issued a final determination that the "rule in question is valid and must be enforced."

On appeal from that determination another Part of this court, in an unreported opinion, found ample credible evidence in the record to support the Director's conclusion that the regulation was a reasonable and valid exercise of the rulemaking authority of the Department. That holding was affirmed essentially for the reasons expressed in the opinions of the hearing officer and the Director. However, since no decision had been rendered on petitioner's equal protection

contention, the matter was remanded for a further hearing on the issue, with requisite findings of fact and conclusions of law to follow. We quote from the earlier opinion:

* * * Reason would seem to indicate that safety problems are the same to both included and exempt classes and exist whether the bus is engaged in transporting children to public, private or charitable day care centers. No valid reason for this legislative classification is evident on the record presented to us. While the State advances various arguments in support of the classification, they have absolutely no factual basis in the record.

We are unable to conclude, on what is before us, whether there exists a legitimate State purpose bearing a rational relationship to this classification.

On the remand the hearing officer concluded from the proofs presented that the "second adult regulation" was a reasonable regulation adopted pursuant to a rational statute and did not deny appellants equal protection. He recommended the issuance of an order requiring compliance. The Director adopted the report and recommendation and issued an order directing appellants to provide a second adult in each vehicle transporting more than six children.

The present appeal ensued. The single point argued is that "[t]he recommendation of the hearing officer adopted by respondent in the light of the evidence adduced upon remand and his findings thereon, contravenes the mandate of this court and compels judgment for petitioner." For reasons which follow, we affirm.

In 1946 the Legislature enacted *N. J. S. A.* 18A:70-1 *et seq.*, requiring a certificate of approval "issued by the commissioner [of education] under rules prescribed by him with the approval of the State board [of education]" for the operation of a child care center. Such center, as used in the chapter, was defined as including

* * * every private non-sectarian child care center, day nursery, nursery school, boarding school, or other establishment of similar character for the care of children, in which any tuition fee, board or other form of compensation for the care of children, is charged,

and in which more than five children over the age of two years and under the age of five years are cared for * * *. [*N. J. S. A.* 18A:70–1]

Not included were the following:

a. The state board of child welfare [now the Division of Youth and Family Services] of the department of institutions and agencies [now the Department of Human Services], or

b. Any aid society of a properly organized and accredited church or fraternal society organized for aid and relief of its members, or

c. Any children's home, orphan asylum, children's aid society, or society for the prevention of cruelty to children, incorporated under the laws of this state and subject to visitation or supervision by the state department of institutions and agencies, except in the conduct of a philanthropic day nursery, or

d. Any other public agency operated by a county, city, municipality or school district.

The statute charged the Commissioner with the responsibility of prescribing "suitable standards governing the education, health and welfare of the children cared for in any child care center, and *the transportation of children to and from school when the transportation is furnished by such child care center* [emphasis supplied]." *N. J. S. A.* 18A: 70–3. Such standards were promulgated. *N. J. A. C.* 6:26– 1.1 *et seq.* Included among those dealing with transportation was a group of safety practices, one of which provided for the second adult in any vehicle transporting more than six children. *N. J. A. C.* 6:26–1.7(d)(1).

In 1972 the functions, powers and duties of the Department of Education and the State Board of Education in connection with child care centers were transferred to the Department of Institutions and Agencies (*N. J. S. A.* 30:1– 25), which in due course adopted standards closely paralleling those of the Education Department, *N. J. A. C.* 10:122– 1.1. They contained, among other things, an identical second adult regulation. *N. J. A. C.* 10:122–2.7(d)(1).

There is no issue here of the reasonableness generally of a second adult regulation of the kind involved in this case.

Appellants recognize that "the subject of the instant rule is an integral portion of safety and health of *all* children under five years of age."

The thrust of appellants' argument is that there is no reasonable basis for a classification "which causes a severe economic hardship upon private child care centers while totally exempting public, quasi-public and charitable child care centers." They maintain that what is a reasonable safety measure for some must be reasonable for all. Their thesis is that if the State does not find it necessary to have a second adult present in a bus containing over six children en route to or from a public institution, then it is unreasonable to require it in the case of a bus en route to and from a nonpublic institution. They argue that "[e]ither this rule is unnecessary altogether and its imposition on appellant constitutes an arbitrary classification, or it is necessary and to exempt public and charitable institutions constitutes an arbitrary classification." In either case, they contend, their equal protection rights are violated. We do not agree.

It is appropriate at this point to examine critically the scope of the remand ordered by this court. Viewing what was said then from the superior vantage point of hindsight, we think the problem might have been expressed differently. Appellants' expressed concern was whether a rational distinction existed between private day care centers and exempt day care centers so as to warrant the application of the safety regulation to the former but not to the latter. The court's comment was that since "[r]eason would seem to indicate that safety problems are the same for both included and exempt classes * * * [n]o valid reason for this legislative classification is evident on the record before us." The court queried "whether there exists a legitimate State purpose bearing a rational relationship to this classification."

We are completely satisfied that there was no intent on the part of the court to question the legislative determination to regulate the operation of a class consisting of privately operated, nonsectarian child day care centers, and to exempt

other classes from such regulations. It is not in dispute here that a logical and reasonable basis existed for placing appellants' type of day care center in a separate class or category for regulatory purposes. *Cf. Guill v. Hoboken Mayor and Council,* 21 *N. J.* 574, 582–583 (1956). Plaintiffs acknowledge that "one cannot attack, and least of all on equal protection grounds, the legislative prerogative to determine which agencies should govern which schools."

That which was sought by the remand was an explanation, not of why day care centers should be divided into regulated and exempt categories, but of why the second adult requirement should apply to some  day care centers and not to others. It is in this respect that we think the remand should have been more sharply focused.

■ The law is settled that the constitutional requirement of equal protection is met by legislation that treats all persons within a class reasonably selected, in a like or similar manner. *Mason v. Civil Service Comm'n,* 51 *N. J.* 115, 128 (1968) ; *Robson v. Rodriquez,* 26 *N. J.* 517, 523 (1958). It does not mean that the regulation must reach every class to which it might be applied—that the Legislature must regulate all or none. *N. J. Chapt., Am. I. P. v. N. J. State Bd. of Prof. Planners,* 48 *N. J.* 581, 601 (1967). Furthermore, the fact that the regulation may cause appellants and others similarly situated a "severe economic hardship" is not decisive, for such burden would exist even if the second adult rule applied to all day care centers without exception.

■ The point to be stressed is that the regulation here involved was issued by the Department in compliance with the legislative mandate to establish standards for the operation of private, nonsectarian, child day care centers under its jurisdiction. As we noted earlier herein, the reasonableness of the second adult regulation as a safety measure is not controverted. But appellants maintain that it is discriminatory to apply the regulation only to them. However, there are child care centers operated by aid societies of properly organized and accredited church or fraternal societies; phil-

anthropic day nurseries and public agencies operated by a county, city municipality or school district which are not under the jurisdiction of the Department so that the regulation could not in any event be made to apply to them.

In retrospect, we are now convinced that some of the wording in the remand was susceptible of misinterpretation. We refer specifically to the inability of the court "to conclude, on what is before us, whether there exists a legitimate State purpose bearing a rational relationship to this classification." Unquestionably, there was a "legitimate State purpose" in assuring the safety of children being transported to and from day care centers. We know of no principle of law which would bar the Department from providing reasonably for the safety and well-being of children for whom it has a measure of responsibility, merely because a private agency or another executive department does not have a similar requirement.

Since the regulation in question, as drawn, was made applicable only to private, nonsectarian day care centers under the jurisdiction of the Department, even though among the exempt categories were centers over which it also exercised control or supervision, the scope of the remand should properly have been limited to a consideration of whether a rational basis existed for excluding any of such centers, inasmuch as safety problems should have been the same for all.

The hearing officer, on the remand, addressed himself to this issue. He found from the proofs submitted that currently the Division of Youth and Family Services operated 22 child care centers, all of which were complying with the regulations promulgated for nonexempt centers, and specifically with the second adult regulation. Furthermore, as to children's homes, orphan asylums and the like, subject to visitation or supervision by the Department by virtue of receiving federal funds, all were required to comply with the same regulations, since no federal funds would be paid over to a center unless it met the State licensing requirements. In addition, there were approximately 230 Head Start pro-

grams, also federally funded, which, by agreement between the Division of Youth and Family Services and the United States Department of Health, Education and Welfare, were expected to comply with the same regulations as those applied to private child care centers. Even in the case of counties and municipalities, it is now provided by statute (*N. J. S. A.* 40:23–8.14) that funds may be appropriated for the support of *nonprofit* child care centers "possessing a valid certificate of approval or waiver in writing from said requirement issued by the [Department] pursuant to chapter 70 of Title 18A * * * and R. S. 30:1–25."

In short, the proofs below established clearly that essentially every day care center under the direct control of the Department or subject to its supervision by reason of any other law or administrative requirement or agreement is required to abide by the Standards for Approval of Child Care Centers, including the second adult provision. Consequently, we perceive neither a denial of equal protection nor unfair discrimination if appellants are compelled to comply with the regulation.

The final determination of the Director of the Division of Youth and Family Services is accordingly affirmed.